IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**DOUGLAS M. JACKSON, SR.,**

    **Plaintiff,**

**vs.**                                        **CASE NO. 1:05CV155-MMP/AK**

**STEVEN SINGER,**

    **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This case was transferred from the United States District Court for the Middle District of Florida on September 13, 2005. (Doc. 31). It had been previously transferred from the Southern District, which had allowed the case to proceed in forma pauperis finding that Plaintiff had stated a claim of imminent danger. Plaintiff is a frequent litigant in federal court and is on the three strikes list, which prohibits him from being granted leave to proceed ifp without a prior showing of imminent danger. 28 U.S. C. §1915(g). Upon transfer to the Middle District, the court dismissed all of Plaintiff's claims for failure to exhaust administrative remedies, except one, and directed him to file an amended complaint "limited to his claim that he was improperly returned to Columbia Correctional

Institution because he had prior problems at Columbia Correctional Institution in reaction to his grievances and litigation and that he is in danger at Columbia Correctional Institution."[1] (Doc. 5, p. 9 in Case No. 3:05CV229). Because Plaintiff was transferred to Washington Correctional Institution, the case was then transferred to this court.[2] (Doc. 31, exhibit 3). Plaintiff is presently housed in Union Correctional Institution.

Defendant Singer has filed a motion for summary judgment seeking dismissal of the amended complaint (doc. 31, exhibit 4) on grounds that Plaintiff has failed to state a claim on either First or Eighth Amendment grounds, Defendant is entitled to qualified immunity, and Plaintiff has failed to allege any physical injury. (Doc. 41).

I.   **Amended Complaint (doc. 31-4)**

Plaintiff claims that he is known in the DOC as a troublemaker and "the Johnny Cochran of the Compound" for his litigious nature and frequent use of the grievance system. (Doc. 31-4, p.6). Plaintiff claims that Defendant Singer is using the same tactics against him that he and his men used against Frank Valdes, who was beaten to

---

[1] This is the only claim raised in the amended complaint which the Court will consider. Plaintiff was not granted leave to amend his complaint and enlarge his claims.

[2] Plaintiff's place of incarceration is not the determining factor in venue, it is the Defendants' residence or where the alleged events occurred. 28 U.S.C. §1391. Although the Order of transfer (doc. 31-2) refers to his current and primary complaints as concerning his conditions at Washington Correctional Institution, the amended complaint alleges claims against Defendant Singer only and concerns events which occurred at Columbia Correctional Institution only, which is in the Middle District. Since this case is old and is now ready for ruling on the pending motion for summary judgment, the undersigned has decided not to transfer it back to the Middle District. Objections to improper venue by either party are deemed waived pursuant to Rule 12(h)(1), Federal Rules of Civil Procedure.

**No. 1:05cv155-mmp/ak**

death at Florida State Prison in 1999. (See Exhibit A). Plaintiff claims that he is now in fear of his life for reprisals by Defendant Singer and his men at Columbia CI who are lawless and out of control in the institution, beating other inmates routinely, and covering it up. Plaintiff claims to have had previous incidents of reprisal and retaliation by the administration at Columbia which DOC knew of and still transferred him back to Columbia in August 2004 which is against policy.

Attached to the complaint are the following exhibits:

a)  Newspaper article dated September 12, 1999

Plaintiff is quoted in the paper as being "chillingly prophetic" because of another lawsuit he filed complaining about conditions at another institution shortly before the death of Frank Valdes who was beaten to death at Florida State Prison in 1999 by prison guards. [The guards are not identified.]

b)  Chronology of Events

August 7, 2004-Sgt. Bell confronted Plaintiff shortly after he was returned to Columbia and said he remembered Plaintiff from 2000 and that there was still bad blood between them for the allegations of sexual misconduct Plaintiff allegedly made against Bell.

August 12, 2004-Sgt. Faile came into Plaintiff's cell around 10:00 and woke him up and then tore his locker and cell up to see if he was a gang member.

August 14, 2004-Major Jarvis, who had allegedly threatened Plaintiff in the past told Plaintiff that he should have killed Plaintiff years ago.

**No. 1:05cv155-mmp/ak**

August 25, 2004-Plaintiff went to medical for back pain arising from a beating he allegedly received at RMC, Lake Butler, prior to coming to Columbia, and which he was warned not to tell anyone about.  He told Nurse Weeks that he had been beaten and she had him wait to see the doctor.  While he was waiting Capt. Brannon approached him and told him he was not supposed to tell about the beating and that we (at Columbia) would have something for him that he would not be around to tell anyone.  The doctor gave him Naproxen for the severe pain he was in.

August 27, 2004-Sgt. Ryder walked up to Plaintiff and ordered him to follow him to an isolated hallway where he grabbed Plaintiff around the throat and slammed him up against the wall telling him that he would be killed for writing grievances and lawsuits.  He allegedly called Plaintiff a nigger and told him that he would be visited by Ryder and others later.

September 10, 2004-Inmate Randy Griffin told Plaintiff that officers were trying to get him to harm Plaintiff by feeding him dog food and by leaving his cell door open so that he could be assaulted.

September 13, 2004-an unknown officer called Plaintiff out to visit his attorney, but Plaintiff was not expecting a meeting with his attorney so he refused to come out of his cell fearing he was going to be taken off and beaten or killed.  Four officers came back and told him that he could not refuse to come out and they would come in and beat him if he would not come.  Plaintiff came out and went to the library where Attorney Barry Rhodes was waiting and told him that Rhodes had been called down from Tallahassee to go over Plaintiff's legal files and remove any documents that Rhodes felt

**No. 1:05cv155-mmp/ak**

Plaintiff did not need.  On the way back to his cell the officers told him that the warden did not like jail house lawyers and they liked to kill them.  Plaintiff also said that Rhodes read his material without his permission.

September 14, 2004-an unknown officer asked Plaintiff if he was at Columbia back in 2000, G-dorm, cell 7 or 8 upstairs, and Plaintiff asked him how he knew him so well, and he said because Plaintiff was the one who filed all those grievances.

September 20, 2004-Inspector Thomas called Plaintiff out to inquire about the alleged assaults which occurred at RMC on June 17 and 18, 2004, against Plaintiff and Inmates Jordan, McKinney, and Johnson.  Plaintiff said the inspector was more concerned about the officers losing their jobs.  Later that night Sgt. Koon, who had heard about the interview, pushed and shoved Plaintiff into the wall.  He also threatened to come back with others and beat his black ass.

September 21, 2004-The Warden or Assistant Warden came to Plaintiff's cell and asked him about the interview and then threatened to come back and hang Plaintiff in his cell.  Later, Capt. Brannon told him that he could kill him and no one could do anything about it.  He also allegedly told Plaintiff that the administration and security were out to get him.  Later that night, an officer came and read a legal paper Plaintiff was attempting to mail to the court and when Plaintiff told him that it was illegal for him to read his mail the officer threatened him and would not give him his name.

September 23, 2004-Ms. Lyones took grievances from Plaintiff and in a disgusting manner said that they made no damn sense.

**No. 1:05cv155-mmp/ak**

September 24, 2004-Ms. Lyones took more grievances from Plaintiff for filing and complained that he was filing some more, just like he did yesterday.

October 7, 2004-Sgt. McCray came to his cell door and cursed him for filing so many grievances.  He admitted that he had just killed a prisoner and Plaintiff would be next.  McCray had allegedly killed Willie Williams at Columbia in July 2004 and was bragging about it.

October 12, 2004-Capt. Brannon and Sgt. McCray walked by Plaintiff's cell and discussed killing him.

October 13, 2004-Colonel Wimberly came to Plaintiff's cell and threatened him for filing grievances.

March 9, 2004-Defendant Singer and Sgt. Sapp called Plaintiff to the laundry and threw a complaint he had filed to the Florida Health Department in Plaintiff's face and threatened him with lock-up, falsifying disciplinary reports, property damage, beating and death

March 13, 2004-Plaintiff told Defendant Singer about another inmate having bullets and Singer allegedly told other inmates that Plaintiff had snitched on them, placing him and his family member Antonio Johnson, also in the DOC, in grave danger.

March 17, 2004-Defendant Singer returned an emergency grievance without action when Plaintiff told him an informant said that he had been asked to harm Plaintiff.

c) <u>Grievance (exhibit C)</u>

**No. 1:05cv155-mmp/ak**

Plaintiff filed a request to the Warden stating the he had been improperly returned to endangerment at CCI because of past problems at the institution based on the many grievances and lawsuits he filed. The response was that the grievance was approved and the matter referred to the Office of the Inspector General for appropriate action.

      d)     <u>Affidavit of Dwight Josey (exhibit D)</u>

Mr. Josey was Plaintiff's roommate on 10/10/04 at CCI and attests that he heard Sgt. McCray threaten Plaintiff for filing so many grievances and heard him brag about killing another prisoner and that he got away with it. Josey heard McCray tell Plaintiff that he would kill him, too, and that Plaintiff was a snitch. McCray allegedly told Plaintiff that he would not allow him to "run his house," and that Plaintiff better stop filing grievances.

      e)     <u>Informal Grievance dated September 23, 2004 (exhibit e)</u>

Plaintiff states that Warden Patterson denied his request for protective custody on September 16, 2004, and on September 21, 2004, the Y-dorm security threatened him. The response was that being threatened by staff was not an issue for protection review, it should be pursued through the grievance procedure and a copy of this was being forwarded to the administration for review.

      f)     <u>Emergency Grievance dated March 17, 2005 (exhibit f)</u>

Plaintiff stated that an orderly had been solicited by officers to harm him by throwing his food tray. The response was that it was not accepted as a grievance of an

**No. 1:05cv155-mmp/ak**

emergency nature, it should have first been submitted at the appropriate level at the institution and was signed by Defendant Singer.

## II.     Standard of Review

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cr. 2004), *citing* Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986). All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts. Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002). The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial. Celotex, 477 U.S. at 322-23. Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof. Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). "For factual issues to be considered genuine, they must have a real basis in the record." Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996).

**No. 1:05cv155-mmp/ak**

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

While a moving party is not required to support his motion for summary judgment with affidavits, Celotex, supra at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment.  Gauck v. Meleski, 346 F.2d 433, 436 (5th Cir. 1965).

**III.    Defendant's Rule 56(e) evidence**

    a)    Inmate History

Records show that Plaintiff was first transferred to Columbia CI on April 23, 2000, and then back on August 5, 2004.  (Exhibits B and B4).  His disciplinary history shows that he received no disciplinary reports during his first time at Columbia (Exhibit B7) and one during his second tenure there for lying to staff on March 8, 2005.  (Exhibit B9).

    b)    Litigation History

**No. 1:05cv155-mmp/ak**

Plaintiff has filed numerous lawsuits and is currently on this Court's three strike list which precludes his filing a complaint without first showing that he is imminent danger of serious injury. (Exhibits C through J).

  c) <u>Affidavit of Steven F. Singer</u>

Defendant Singer attests that he is currently Warden at Columbia CI and has been since July 2004. He was not assigned to Columbia in 2000, was unaware of any prior problems with Plaintiff at Columbia, and took no part in Plaintiff's transfer back to Columbia in 2004. Defendant denies taking any retaliatory action against the Plaintiff or instructing any of his correctional officers to take any such action, and he specifically denies ever telling other inmates that Plaintiff snitched about bullets being on the compound. (Exhibit K-K2). Defendant's actions with regard to Plaintiff have been in approving his grievances and initiating an investigation into the charges he made about his life being threatened.

  d) <u>Formal Grievance to Warden Singer dated 9/14/04</u>

Plaintiff complained that he was improperly returned to Columbia after "the problems we had the last time I was here due to my griev./litigation filings that the admin/security <u>still</u> holds against me. Even yesterday, 9/13/04, it showed from the warden's office [attacking my legal property] and from security whereby an officer remembered me commenting, 'how could I forget many damn times you filed on me.'!" Plaintiff claimed to be in fear of being hurt or killed and requested immediate removal from Columbia.

In response, Defendant Singer wrote:

**No. 1:05cv155-mmp/ak**

> Your request for administrative remedy has been reviewed and evaluated. The issue of your complaint has been referred to Office of the Inspector General for appropriate action. Upon completion of necessary action, information will be provided to appropriate administration for final determination and handling. An action has been initiated, you may consider your request for administrative remedy **approved** from that standpoint. (Emphasis added). (Exhibit L1).

e)      <u>Bureau of State Investigations summary</u>

An investigation was conducted on Plaintiff's allegations on 9/20/04, and it was determined that there was no record of any complaints at Columbia during the five months he was there in 2000. It was noted that he had named no specific staff or any witnesses to his allegations. (Exhibit M).

f)      <u>Affidavit of Linda Uphaus</u>

Ms. Uphaus is presently employed at Columbia and investigates circumstances and situations that may call for protective measures for inmates. In this capacity she interviewed Plaintiff concerning information he allegedly had about two bullets being on the compound. According to Uphaus, Plaintiff offered to give this information in exchange for having certain disciplinary reports dropped and a change in his housing assignment at Columbia. He told Uphaus he did not consider himself in danger at the time, although he acknowledged that if another inmate found out he would be labeled a snitch. He did not tell Uphaus that Singer had or might divulge this information in an effort to endanger him. (Exhibit N-N1).

g)      <u>Affidavit of Michael Willis</u>

**No. 1:05cv155-mmp/ak**

Willis is Assistant Warden at Columbia, who also investigated Plaintiff's claims regarding the bullet on the compound. He noted that Plaintiff requested an IRS form for Reward for Original Information (exhibit P) and was involved in the Institutional Classification Team decision that Plaintiff should be transferred to another institution to protect him from other inmates based on this information. Plaintiff did not mention to Willis his present contention that Warden Singer released the information to other inmates. (Exhibit O-O1).

h)     Affidavit of Edwin Jeffcoat

Mr. Jeffcoat is a State Classification Officer employed by the DOC for thirty years. He was part of the team who reviewed the investigative results of Officer Uphaus concerning Plaintiff's information about bullets on the compound and he, too, determined that a transfer from Columbia would be in the Plaintiff's best interests. He was never advised of any allegations that Warden Singer was involved in the release of the information to others to cause harm to Plaintiff. (Exhibit Q).

I)     Affidavit of Katherine Shepherd

Katherine Shepherd is Administrative Assistant, Bureau of Inmate Grievance Appeals, and attests that from August 5, 2004, to April 22, 2005, Plaintiff submitted 311 grievances. (Exhibit R).

j)     Affidavit of Doyle Kemp

Doyle Kemp is Bureau Chief of the Bureau of Sentence Structure and Population Management. He reviewed Plaintiff's records and found that Plaintiff was transferred to Columbia CI on August 5, 2004, because of a "changed medical profile," and that

**No. 1:05cv155-mmp/ak**

Warden Singer was in no way connected to the transfer. Kemp also attests that there was no reason why Plaintiff could not be returned to Columbia as the transfer was not prohibited by any Department policy or procedure. (Exhibit T-T1).

    k)    <u>Job Description of Warden Position</u>

The description of the duties and responsibilities of a DOC warden. (Exhibit U).

**ANALYSIS**

    a)    <u>First Amendment Retaliation</u>

Plaintiff claims that he was transferred back to Columbia and placed in danger at the hands of Warden Singer and his men because of his past practice of filing grievances and lawsuits.

It is well established that a prisoner's constitutional rights are violated if adverse action is taken against him in retaliation for the exercise of his First Amendment rights. <u>See</u> <u>Boxer v. Harris</u>, 437 F.3d 1107, 1112 (11th Cir. 2006); <u>Farrow v. West</u>, 320 F.3d 1235, 1248 (11th Cir. 2003); <u>Mitchell v. Farcass</u>, 112 F.3d 1483, 1490 (11th Cir. 1997); <u>Wright v. Newsome</u>, 795 F.2d 964 968 (11th Cir. 1986); <u>Adams v. James</u>, 784 F.2d 1077, 1080 (11th Cir. 1986). In the prison setting "[t]he state may not burden [First Amendment rights] with practices that are not reasonably related to legitimate penological objectives . . . nor act with the intent of chilling that First Amendment right." <u>Harris v. Ostrout</u>, 65 F.3d 912, 916 (11th Cir. 1995) (citing <u>Turner v. Safley</u>, 482 U.S. 78, 85-89, 107 S.Ct. 2254, 2260-61, 96 L.Ed.2d 64 (1987), and <u>Wildberger v. Bracknell</u>, 869 F.2d 1467, 1468 (11th Cir. 1989)). In general, a prisoner may establish retaliation by "demonstrating that the prison official's actions were `the result of his having filed a

**No. 1:05cv155-mmp/ak**

grievance concerning the conditions of his imprisonment.'" Farrow, 320 F.3d at 1248 (citing Wildberger, 869 F.2d at 1468). The prisoner must, however, come forward with more than "general attacks" upon a defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that plaintiff had carried his burden of proving the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600, 118 S.Ct. 1584, 1598, 140 L.Ed.2d 759 (1998) (citations omitted). A prisoner does not automatically cast doubt upon an institutional decision, nor is the decision "subject to exhaustive challenge," solely because he was engaged in a First Amendment right. Adams, 784 F.2d at 1082; Adams v. James, 797 F.Supp. 940, 949 (M.D. Fla. 1992). Even though prison officials do not have the authority to prohibit inmates from filing grievances it does not follow that every time an inmate files a grievance the act of doing so renders the exercise of prison authority suspect. See Adams, 784 F.2d at 1082. Indeed, while mindful that a plaintiff may not be held to a heightened burden of proof, see Crawford-El, 523 U.S. at 580-86 (holding that in retaliation claim prisoner could not be required to show "clear and convincing" evidence of defendant's unconstitutional motives), courts should approach prisoner claims of retaliation "with skepticism and particular care" due to the "near inevitability" that prisoners will take exception with the decisions of prison officials and "the ease with which claims of retaliation may be fabricated." Dawes v. Walker, 239 F.3d 489, 491 (2nd Cir. 2001), impliedly overruled in part on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

**No. 1:05cv155-mmp/ak**

Although this motion has been pending since January 2006, and Plaintiff has been reminded of his responsibility to come forward with evidentiary materials to refute the contentions raised in the motion (doc.49), he has not filed a response. Of the materials submitted with his complaint only the affidavit of Dwight Josey could be considered evidentiary and it does not concern Defendant Singer. According to the affidavits and other materials submitted by the Defendant, Warden Singer was not working in any capacity at Columbia CI when Plaintiff was first housed there in 2000, and there was no "trouble" at Columbia involving Plaintiff during this time that could have been reported to Singer to justify some type of retaliation by him. Also, according to Doyle Kemp there was no reason not to return Plaintiff to Columbia in 2004, no policy that would have prohibited it, and in any event, Defendant was not involved in the transfer decision. Finally, Defendant Singer **approved** Plaintiff's grievance concerning possible retaliation and directed that an investigation be conducted into the claims Plaintiff made. As Defendant points out, its difficult to discern a retaliatory motive behind Defendant's actions when he in fact granted Plaintiff relief on his grievance and approved an investigation into the claims. It is even harder to find an infringement upon Plaintiff's First Amendment right to seek redress when Plaintiff filed 311 grievances under Defendant's authority as Warden of Columbia CI. Thus, Plaintiff has not only failed to demonstrate any actual retaliation by Defendant, he has also failed to connect any First Amendment activity on his part to any actions or inactions resembling retaliation on the part of Defendant Singer. There is absolutely no affirmative evidence of retaliation from which a jury could find that plaintiff had carried his burden of proving

**No. 1:05cv155-mmp/ak**

the requisite motive. Plaintiff has wholly failed to state a claim under the First Amendment for relief.

    b)    <u>Relief</u>

Plaintiff has shown no actual injuries for which compensatory damages could be awarded. Section 1997e(e) provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Despite the wording of § 1997e(e), that "[n]o Federal civil *action* may be *brought*," this circuit has established that the statute limits relief, not causes of action. If there is no physical injury alleged, then mental or emotional monetary damages, as well as punitive damages, cannot be recovered, but declaratory and injunctive relief may be available. <u>Harris v. Garner</u>, 216 F.3d 970 (11th Cir. 2000)[3], *reinstating in part* 190 F.3d 1279 (11th Cir. 1999) and <u>Osterback v. Ingram, et al.</u>, No. 00-10558, 263 F.3d 169 (11th Cir. 2001) (Table). 215 F.3d at 1230. However, any request for declaratory or injunctive relief has been rendered moot by Plaintiff's transfer from Columbia CI. <u>See</u> <u>Spears v. Thigpen</u>, 846 F.2d 1327, 1328 (11th Cir. 1988), *citing* <u>Wahl v. McIver</u>, 773 F.2d 1169, 1173 (11th Cir. 1985). <u>See</u> also <u>Zatler v. Wainwright</u>, 802 F.2d 397, 399 (11th Cir. 1986).

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's Motion for Summary Judgment (doc. 42) be **GRANTED**, and that Plaintiff's amended

---

[3] <u>Harris v. Garner</u>, 190 F.3d 1279 (11th Cir. 1999) was vacated by 197 F.3d 1059, and the Opinion Reinstated in Part on Rehearing by 216 F.3d 970 (11th Cir. 2000), *cert. denied* 121 S. Ct. 2214 (2001). The parts of the panel opinion relevant to this legal issue were reinstated.

**No. 1:05cv155-mmp/ak**

complaint (doc. 31) be **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2), and that the order adopting this report and recommendation direct the clerk of court to note on the docket that this cause was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IN CHAMBERS** at Gainesville, Florida, this **23rd** day of August, 2006.


s/ A. KORNBLUM
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 1:05cv155-mmp/ak**